IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, AS RECEIVER
FOR HOWARD WAXENBERG TRADING
L.L.C., HKW TRADING LLC, AND HKW
TRADING FUND I LLC, DOWNING &
ASSOCIATES TECHNICAL ANALYSIS,
and the ESTATE OF HOWARD WAXENBERG,

        Plaintiff

vs.                                          CASE NO. 8:05-cv-01856-27-MSS

ZELDA J. WAXENBERG, an individual
and as Trustee of the ZELDA WAXENBERG
FAMILY TRUST, Dated August 1, 1990

        Defendant.

_____/

### ZELDA J. WAXENBERG AND THE
### ZELDA WAXENBERG FAMILY TRUST'S MOTION TO
### DISMISS THE SECOND AMENDED COMPLAINT

      Defendants Zelda J. Waxenberg and the Zelda Waxenberg Family Trust (the "Trust") hereby

move to dismiss the Second Amended Complaint filed by Plaintiff Burton W. Wiand, as Receiver for

Downing & Associates Technical Analysis (n/k/a the Estate of Howard Waxenberg), Howard Waxenberg

Trading LLC, HKW Trading LLC, and HKW Trading Fund I LLC (the "Receiver").[1]  The Second

Amended Complaint should be dismissed because 1) The Receiver has failed to state a fraudulent transfer

claim pursuant to Florida's Uniform Fraudulent Transfer Act; (2) The Receiver has failed to plead the

fraudulent transfer claims with specificity as required by this Court and Rule 9(b); (3) The Receiver does

not have standing to bring claims on behalf of Downing and Associates Technical Analysis, a fictitious

business name for Howard Waxenberg; (4) the Receiver cannot bring the claims for unjust enrichment in

Count II, because the Receiver has pled that the Defendants were not unjustly enriched; (4) the Receiver's

---

[1] The Receiver's four Count Amended Complaint has expanded into an eleven Count Second Amended Complaint.

additional counts for remedies for "unjust enrichment" are duplicative of the other unjust enrichment counts in the Second Amended Complaint and fail to state independent causes of action; and (5) The Receiver has failed to plead a cause of action for an accounting.  In further support of this Motion, the Defendants submit the following Memorandum:

## MEMORANDUM

**I.      THE RECEIVER HAS FAILED TO ALLEGE A CLAIM UNDER
        FLORIDA'S UNIFORM FRAUDULENT TRANSFER ACT**

In its Second Amended Complaint, the Receiver again seeks to bring claims pursuant to Florida's Uniform Fraudulent Transfer Act ("FUFTA") on behalf of the "Receivership Entities." In addition to Howard Waxenberg Trading LLC, HKW Trading LLC, and HKW Trading Fund I LLC, the alleged "Receivership Entities" also include Downing & Associates Technical Analysis ("DATA") a fictitious business name for Howard Waxenberg's sole proprietorship, which lacks standing to sue.

The FUFTA claims pled in the Amended Complaint were previously dismissed by the Court without prejudice because the Receiver failed to allege "that he or the Receivership Entities [were] "creditors," pursuant to FUFTA and if so, which entity [was] a "creditor." This Court also held that the Receiver did not identify any alleged "debtor(s)." More importantly, the Receiver failed to allege what "claim" the unidentified "creditor" possessed against the unidentified "debtor." (Omnibus Order p. 9).

The Receiver has acknowledged unequivocally that he is not a "creditor." (Tr. 9-10).[2] Since only a "creditor" can sue under FUFTA, the Receiver has acknowledged his inability to bring FUFTA claims.[3]  In Counts I, III, and V of the Second Amended Complaint the Receiver

---

[2] At oral argument on the previous motions to dismiss the Magistrate Judge asked Receiver's counsel two questions, the first, presumably because the Receiver filed FUFTA claims, was "whether you contend you are a creditor or not." (Tr. 9). Counsel responded: "Quite simply, as to number one, no, we do not contend we are a creditor…." (Tr. P. 10).

[3] Section 726.01 *et seq.*

again fails to state a claim for relief under FUFTA.  Instead, the Receiver *nominally* designates the Receivership Entities "creditors" and Howard Waxenberg the "debtor," while factually alleging that the Receivership Entities are "debtors" pursuant to FUFTA.  The Receiver engages in tortured, inconsistent pleading in his attempt to create a FUFTA claim that simply does not exist.  As pled in the Second Amended Complaint, this Receiver is standing in the shoes of the Receivership Entities as "debtor/transferor", not a "creditor."

In the introductory allegations and in each count, the Receiver alleges that the Receivership Entities "made the transfers."  Thus, the Receivership Entities can only be the "debtor" pursuant to FUFTA.[4]  The headings in the "Facts Common to All Causes of Action" allege that the Receivership Entities "made the transfers."  The Receiver pleads: (i) "WAXENBERG IMPROPERLY CAUSED *THE RECEIVERSHIP ENTITIES* TO PAY FALSE PROFITS TO INVESTORS;" (ii) "WAXENBERG IMPROPERLY CAUSED *THE RECEIVERSHIP ENTITIES* TO PURPORTEDLY 'RETURN PRINCIPAL' TO THE DEFENDANT;" and (iii) "WAXENBERG IMPROPERLY CAUSED *THE RECEIVERSHIP ENTITIES* TO MAKE OTHER TRANSFERS." (Second Amended Complaint pp.10, 12 and 13) (Emphasis added); *See also* (Second Amended Complaint ¶¶ 66, 68, 72, 74, 82, 83, 89, 93) (Alleging that the purported transfers were made by the Receivership Entities).  The factual allegations

---

[4] In pertinent part, FUFTA provides:

§ *726.105*(1) A *transfer made* or obligation incurred *by a debtor* is fraudulent *as to a creditor,* whether the *creditor's* claim arose before or after the *transfer* was made or the obligation was incurred, if the *debtor made the transfer* or incurred the obligation:
(a)   With actual intent to hinder, delay, or defraud *any creditor of the debtor*; or
(b)   Without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . (Emphasis added).
§ 726.106  (1) A *transfer made* or obligation incurred *by a debtor* is fraudulent *as to a creditor* whose claim arose before the *transfer* was made or the obligation was incurred if the *debtor made the transfer* or incurred the obligation without receiving a reasonably equivalent value . . .
(2) A *transfer made by a debtor* is fraudulent *as to a creditor* whose claim arose before the transfer was made . . . (Emphasis added).

within the FUFTA Counts also allege that the Receivership Entities were the transferors and thus the "debtor" under FUFTA.  The FUFTA Claims in Counts I, III and V are allegedly based on the "wrongful transfers of … the investors' commingled principal money" *from* "Howard Waxenberg Trading" and/or "DATA" and/or "the other Receivership Entities." (Second Amended Complaint ¶¶ 95, 113, 130).

The Receiver further alleges, consistent with the Receivership Entities being the debtor/transferor, that the transfers were fraudulent because they were made with the actual intent to hinder, delay or defraud "creditors of Waxenberg and of Howard Waxenberg Trading and of each of the Receivership Entities" or alternatively that the transfers were made at a time when the assets of the Howard Waxenberg and the Receivership Entities were "unreasonably small in relation to the business or transaction" or "Waxenberg intended that he and each of the Receivership Entities incur, or believed or reasonably should have believed that he and each of the Receivership Entities would incur, debts beyond his and each of the Receivership Entities' ability to pay as they became due." (Second Amended Complaint ¶¶ 98-99, 116-117, 133-134).  The Receiver further pleads the Receivership Entities are the debtor/transferor and not a creditor by alleging that Waxenberg and the Receivership Entities did not "receive a reasonably equivalent value" in exchange for the transfers or that they were insolvent at all times. (See e.g. Second Amended Complaint ¶¶ 100-101, 117-119, 136).

If the Receivership Entities were indeed "creditors" the above allegations would not be included in the Second Amended Complaint.  The financial status of a "creditor" is irrelevant to a determination regarding the fraudulent nature of the transfer.  Also, the "creditor" is not a party that *makes* a transfer.  *See* §§ 726.105 and .106, F.S.  Therefore, it is irrelevant that the "creditor" did not receive a reasonably equivalent value in exchange for the transfers.

Here, the Receiver has alleged that it is standing in the shoes of the "debtor-transferors." Despite attempts to plead otherwise, the Receiver has still maintained that the Receivership Entities are the parties that fraudulently conveyed funds to others.  Florida law simply does not allow the debtor-transferor to

bring a claim under FUFTA.  "Under Florida law, only a 'creditor' has standing to seek to avoid a fraudulent transfer." *Florida West Gateway, Inc. v. Maloney,* 182 B.R. 595, 597-598 (Bkrtcy. S.D. Fla. 1995).

Bankruptcy courts in the Southern and Middle Districts of Florida have examined a debtor-transferor's standing under FUFTA and have held that where, as here, the debtor-transferor does not have the benefit of the Bankruptcy Code's fraudulent transfer provision, "which confers upon the debtor the status of a 'hypothetical judgment lien creditor,'" a "debtor … would not be able to maintain any action under [Florida] state law to avoid a fraudulent transfer made by it." *Florida West Gateway, Inc. v. Maloney,* 182 B.R. 595 (Bkrtcy. S.D. Fla. 1995); *In re Transit Group, Inc*., 332 B.R. 45, 59 and fn. 1 (Bkrtcy.M.D.Fla.2005) (The "[debtor] could not have pursued avoidance claims, such as this fraudulent transfer claim or other preference claims, until *after* the bankruptcy was filed. Prior to the Chapter 11 filing, only creditors could have asserted such claims, as allowed by state law [Section 726.202 et seq.]").

A simple reading of the statue shows that the Receivership Entities are not and cannot be creditors under FUFTA.  The Receiver's persistent attempts to maintain a case that it cannot bring has resulted in tortured and inconsistent allegations that ultimately fail to plead a cause of action under FUFTA.  The Receiver's FUFTA claims should be dismissed with prejudice.

## II.   THE SECOND AMENDED COMPLAINT FAILS TO COMPLY WITH RULE 9(b)

The Omnibus Order implicitly acknowledges the application of the heightened pleading standard of Rule 9(b) to fraudulent transfer claims and finds that, in the case alleged against Zelda Waxenberg and the Trust, the "complaint[] do[es] not include allegations pertaining to the dates of the distributions or the Entities that transferred the money.  These deficiencies shall be addressed should the Receiver seek to amend these complaints." (Omnibus Order p. 8 fn. 6). (Emphasis in original).

The Receiver has attached two schedules to the Second Amended Complaint identifying a number of transfers allegedly made to Zelda Waxenberg or the Trust.  The vast majority of these transfers are identified merely as transfers to Zelda Waxenberg and/or the Trust purportedly from Howard Waxenberg or his sole proprietorship DATA –on whose behalf the Receiver has no standing to pursue claims. (Second Amended Complaint ¶¶ 66 and 85, Exhibits A and B).  The schedules provide no information regarding how these transfers relate to a particular Receivership Entity and specifically, do not identify "the Entities that transferred the money" as required by the Court. (Omnibus Order p. 8 fn. 6).  As a result, the allegations and incorporated schedules provide no basis for a FUFTA claim on behalf of the Receiver.

Based on the allegations of the Second Amended Complaint, it appears that the Receiver cannot meet this basic pleading requirement.  The Second Amended Complaint alleges that "…Waxenberg raised over $130 million on behalf of the Receivership Entities…." (Second Amended Complaint ¶ 50).  The Receiver further alleges that the money raised was "pooled and commingled with all other investors' principal investment money." (Second Amended Complaint ¶ 51).  These commingled funds, rather than being deposited in or even allegedly placed in a Receivership Entity, were instead placed in "bank, brokerage, and trading accounts.  Each of these bank, brokerage, and trading accounts was titled in the name of one of the Receivership Entities *or Waxenberg himself.*" (Second Amended Complaint ¶ 52).

The Receiver's reliance upon *Scholes v. Lehmann,* 56 F.3d 750, 753-754 (7th Cir. 1995) can only carry him so far.  The Receiver argues that he has standing to sue on behalf of the "Receivership Entities" because they are legally separate from the wrongdoing principal and are entitled to conduct the stated purpose of their business.  This argument, however, ignores the Receiver's pleadings, as noted above.  Indeed, the Receiver is asking this Court to apply a corporate fiction to cleanse a corporation when no independent legal entity arguably existed.  The Receiver also asks this Court to apply some kind of cleansing fiction so that the Receiver will have standing to recover funds that were allegedly stolen

outright by Howard Waxenberg and are not alleged to have been received by, invested in, or transferred to or from a Receivership Entity.

In *Scholes*, the case relied upon by the Receiver, two key facts conferring standing were that corporations "received money" from the investors and the money was then paid out of the corporations to the defendants. *Scholes*, 56 F.3d at 754. Obviously, if no corporation received funds and then paid those funds to the defendants, the fiction cannot be applied. In this case, the Receiver has failed to plead ultimate facts with sufficient particularity to support application of the legal fiction applied in *Scholes*.

## III.   DOWNING & ASSOCIATES TECHNICAL ANALYSIS (N/K/A THE ESTATE OF HOWARD WAXENBERG) SHOULD BE DISMISSED WITH PREJUDICE

This Court addressed the Receiver's standing to bring claims on behalf of the Estate of Howard Waxenberg and DATA in the Omnibus Order:

> The Magistrate recommended that the claims by the Receiver on behalf of the Estate of Howard Waxenberg and Downing & Associates Technical Analysis ("DATA") be dismissed with prejudice because these entities are not separate legal entities, but are, in fact, incarnations of Howard Waxenberg. Thus, they do not have a separate legal identity capable of "cleansing" under the Scholes rationale. The Receiver has not objected to the dismissal of claims on behalf of the Estate of Howard Waxenberg, although he does object to the dismissal of DATA.
>
> The Receiver conceded during the hearing on these motions before the Magistrate Judge that DATA is a "doing business as" name for Waxenberg "and of course that would not be separate and distinct." (Tr. 20, 108). *See Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997) (distinguishing *Scholes* and holding that receiver of a d/b/a entity could not sue transferees for a fraudulent transfer); cf. *Commodity Futures Trading Comm. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1482 (pursuant to Fed. R. Civ. P. 17(b), receiver was proper party to sue on behalf of a commodities pool, an unincorporated association that was recognized as a separate legal entity). The Receiver now argues that DATA is an unincorporated association under Florida law, although no allegations in the complaints support this assertion. *Peoples Gas Sys., Inc. v. Acme Gas Corp.*, 689 So. 2d 292, 298 n.8 (Fla. 3d DCA 1997) (noting that an unincorporated association is generally "created and formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose"); *Prewitt Enter., Inc. v. Org. of*

*Petroleum Exporting Countries*, 353 F.3d 916,922 n.6 (11th Cir. 2003) (same).

Rather than dismissing DATA with prejudice, this Court held that "[t]o the extent the Receiver can plead facts, in *good faith*, showing that DATA was a *separate legal entity* that was injured by disbursements of its funds for unauthorized purposes, the Receiver may include DATA as a party-plaintiff." (Omnibus Order p. 15) (Emphasis added).

Notwithstanding the Court's admonition, in the Second Amended Complaint the Receiver has failed to plead any facts or even contend that DATA is a "separate legal entity."  As already conceded by the Receiver in this case and in the SEC action, DATA is nothing more than a fictitious business name, or alias, for Howard Waxenberg's sole proprietorship.[5]  In the Second Amended Complaint the Receiver deceptively omits from his allegations the known fact that DATA is merely a fictitious business name, a fact candidly asserted by the SEC in its action.[6]  Nevertheless, the Receiver still does not allege that DATA is a separate legal entity.  Instead the Receiver merely alleges that Waxenberg "raised money from investors for an 'investment fund' he purported to manage through DATA." (Second Amended Complaint ¶ 14).  The Receiver further alleges that Waxenberg made purportedly false "representations to investors and potential investors in DATA that the investment fund was a pool of money raised from various investors to day trade securities and futures contracts, and that investors would share in the investment fund's trading profits and losses." (Second Amended Complaint ¶ 15).

In *Troelstrup*, the Court addressed the issue of the Receiver's standing to bring a claim on behalf of a "sole proprietorship" or an "investment account."  The Court held:

> Not only was Troelstrup not appointed the receiver of anyone except Tobin [the alleged wrongdoer]; he could not have been appointed the receiver of Phoenix Pharynol because it is not a corporation or other legally recognized

---

[5] Indeed, in both this case and the SEC case DATA is recognized as synonymous with the Estate of Howard Waxenberg (Downing & Associates Technical Analysis n/k/a the Estate of Howard Waxenberg).
[6] As noted in the Report and Recommendation:  "The Receiver conceded at the hearing that the allegations contained in the SEC action applied to the instant cases…."  (R&R p.33, fn19).

> entity on whose behalf a receiver or anyone else could sue. In *Scholes* there were entities that might be bearers of legal rights, besides the defrauder, and so the receiver wasn't limited to being a receiver for the defrauder. All there is here, besides Tobin himself, is an account in a brokerage house. The account is an asset, like a bank account, rather than a rights-bearing entity. It was established by Tobin as a sole proprietorship, which is a type of enterprise that, as we observed recently, has no legal identity apart from the proprietor. *Bartlett v. Heibl,* 128 F.3d 497, 499-500 (7th Cir.1997).
>
> ***
>
> Troelstrup calls the Phoenix Pharynol account "the Fund." A name of his own devising, it has no more significance than if he called it "Phoenix Pharynol Corporation," since it is not a corporation. Hamlet's dictum that "there is nothing either good or bad but thinking makes it so" has limited scope in federal litigation

*Troelstrup*, 130 F.3d at 1277-1278; *See also Boyd-Scarp Enterprises, Inc. v. Saunders*, 453 So.2d 161, 163 (Fla. 1st DCA 1984) ("… a sole proprietor may not be his own employee because there is no entity apart from the individual which could be considered the individual's employer.").  "Doing business under another name does not create an entity distinct from the person operating the business; the firm name and the sole proprietor's name are but two names for one person." 65 C.J.S. *Names* § 14 (2004).

Consistent with arguments made in its Objections to the Magistrate Judge's Report and Recommendation, the Receiver may attempt to argue that its allegations plead that DATA is some sort of "unincorporated association" on whose behalf the Receiver can sue.  Such a contention must fail because: (1) DATA, as the Receiver has conceded, is nothing more than a "d/b/a" or another name for Howard Waxenberg, not an "unincorporated association" (Tr. 20, 108); (2) an "unincorporated association" is not a separate and distinct legal entity that has the capacity to sue in any case; and, (3) the Receiver has alleged that DATA lacked a "lawful purpose."

### A.   DATA is not an Unincorporated Association

The sole basis for a claim by the Receiver that DATA is an "unincorporated association" is that through DATA, "Waxenberg raised money from investors for an 'investment fund' he purported to manage through DATA."  The Receiver also alleges:  "Waxenberg represented … that the investment

9

fund was a pool of money raised from various investors to day trade securities and futures contracts, and that investors would share in the investment funds' trading profits or losses." (Second Amended Complaint ¶¶ 14-15).

Glaringly absent from the Receiver's allegations, however, is any claim that there was in fact, a "pool of money," a "fund", or any investments.  To the extent that the Receiver will attempt to claim that this "fund " is somehow a rights-bearing entity, the Receiver has only deceptively crafted language to make it appear that there is some structure and formality to a "fund."  In fact, upon careful reading, the Receiver merely says that Waxenberg "purported" to manage a fund through DATA, that Waxenberg "represented" that he would "day trade securities and futures contracts", and that "investors would share in the investment fund's trading profits or losses." (Second Amended Complaint ¶ 15).   The Receiver does not contend that any such fund actually existed, that any investments were actually purchased, or that any such trading actually occurred.

Indeed, the Second Amended Complaint belies this.  The Receiver alleges: "Waxenberg commingled investors' principal investment money in bank, brokerage, and trading accounts.  Each of these … accounts was titled in the name of one of the Receivership Entities or Waxenberg himself." (Second Amended Complaint ¶ 52).  The Receiver further alleges that Howard Waxenberg "represented … that their investment money was or would be primarily used to day trade securities and futures contracts."  However, "[c]ontrary to those representations, Waxenberg caused the Receivership Entities to hold the majority of investor money in low-yield investments, such as Treasury Bills and money market accounts." (Second Amended Complaint ¶¶ 55-56).

Assuming *arguendo*, however, that the Receiver can argue that DATA was a rights-bearing entity, inconsistent with his pleadings and admissions, this argument nevertheless must fail.  DATA is not an "unincorporated association."  An unincorporated association in this jurisdiction is "[g]enerally 'created and formed by the voluntary action of a number of individuals in associating themselves together

under a common name for the accomplishment of some lawful purpose."' *Peoples Gas System, Inc. v. Acme Gas Corp.*, 689 So.2d 292, 298 (Fla. 3d DCA 1997) (citing 4 Fla. Jur.2d Associations & Clubs §§ 1, 2 (1994); *see also Penrod Drilling Co. v. Johnson,* 414 F.2d 1217, 1222 (5th Cir.1969), *cert. denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970)).

The definition is similar in the Eleventh Circuit.  "Under this Circuit's jurisprudence, an unincorporated association is defined as "a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise."' *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 922 (11th Cir. 2003) (*quoting Penrod Drilling Co. v. Johnson,* 414 F.2d 1217, 1222 (5th Cir.1969) (holding that labor unions, agricultural societies, co-ops, banking associations, charitable associations, news associations, and religious societies may all be considered unincorporated associations)).  DATA was a sole proprietorship that, according to the Receiver's pleading, was formed and existed for an *unlawful* purpose. DATA does not meet this jurisdiction's definition of an unincorporated association.

**B.**      **An Unincorporated Association has no Legal Existence and Does Not Have the Capacity to Sue as an Entity**

Even assuming *arguendo* that DATA is an "unincorporated association", it is not a legal entity that can sue or be sued in Florida.  "Unlike some other jurisdictions that permit an unincorporated association to sue or be sued in its own name, Florida does not have such an enabling statute." *Johnston v. Meredith*, 840 So.2d 315, 316 (Fla. 3d DCA 2003).  ""An unincorporated ⋯ association has no legal existence and generally does not have the capacity to sue or be sued as an entity; thus in the absence of an enabling or permissive statute conferring associational standing, such an association must sue or be sued in the names of the individuals composing it rather than its firm name."" *Asociacion De Perjudicados Por Inversiones Efectuadas En U.S.A. v. Citibank, F.S.B.*, 770 So.2d 1267, 1269 fn. 3 (Fla. 3d DCA 2000) (*quoting* Fla. Jur.2d, *Associations and Clubs* § 15 (1994) (citing *Hunt v. Adams,* 111 Fla. 164, 149 So. 24

(1933); *Johnston v. Albritton,* 101 Fla. 1285, 134 So. 563 (1931); *I.W. Phillips & Co. v. Hall,* 99 Fla.

1206, 128 So. 635 (1930); *Guyton v. Howard,* 525 So.2d 948 (Fla. 1st DCA 1988); *Walton-Okaloosa-*

*Santa Rosa Medical Soc. v. Spires,* 153 So.2d 325 (Fla. 1st DCA 1963); *Florio v. State,* 119 So.2d 305

(Fla. 2d DCA 1960)).

 The case relied upon by the Receiver in its Objections to the Magistrate's Report and

Recommendation for the proposition that an "unincorporated association" has the capacity to sue is

inapposite.  The Receiver relied solely on a case cited in *Troelstrup -- CFTC v. Chilcott Portfolio*

*Management, Inc.,* 713 F.2d 1477, 1482 (10th Cir.1983).  The Receiver contends that this case is

"similar[]" to *Chilcott* wherein the court found: "The Fund is within the broad term of an unincorporated

association which may sue for purpose of enforcing for itself substantive rights under the Constitution or

laws of the United States."  It is clear however from the language *quoted by the Receiver* that *Chilcott* has

no application here.  In full, the *Chilcott* court held:

> We agree with the court's reasoning that the Receiver comes within the
> provisions of Rule 17(b), Fed.R.Civ.P., in that the Fund is within the
> broad terms of an unincorporated association which may sue for the
> purpose of enforcing for itself substantive rights claimed *under the*
> *Constitution or laws of the United States*. The Receiver is asserting on
> behalf of the Fund substantive rights existing under Federal Law, the
> Securities Exchange Act, 15 U.S.C. § 78a *et seq,* and the Commodities
> Exchange Act, 7 U.S.C. § 1 *et seq.* The court properly conferred the
> power on the Receiver to sue. *See Jones v. Missouri-Edison Electric Co.,*
> 144 F. 765, 776-77 (8th Cir.1906); *Miller v. Steinbach,* 268 F.Supp. 255,
> 268-69 (S.D.N.Y.1967). Moreover the Commodities Exchange Act
> recognizes the status of commodity pool operators, 7 U.S.C. § 2, and the
> *CFTC regulations recognize the status of a pool as "an entity cognizable*
> *as a legal entity separate from that of the pool operator.*" 17 CFR §
> 4.20(a)(1)(1982).

*Id.* (Emphasis added)

 Unlike *Chilcott,* the Receiver here is pursuing state law claims and is not asserting "substantive

rights, existing under Federal Law" on behalf of an unincorporated association. (Id.)  As a result, it does

not fall within the exception contained in Rule 17(b), Fed.R.Civ.P.[7] Furthermore, the Receiver in this case, unlike *Chilcott*, is not suing on behalf of a commodities pool that "CFTC regulations recognize" as "'an entity cognizable as a legal entity separate from that of the pool operator." (Id.). *Chilcott*, the only authority cited by the Receiver in support of its argument that a claim can be brought on behalf of DATA, has no application here.

Finally, to the extent the Receiver appears to be attempting to allege in the Second Amended Complaint that DATA is some sort of "unincorporated association" it appears to be an association of "investors" coming together to share in the investment fund's profits and losses. Indeed, in Florida, the Receiver would be required to bring its causes of action for transfers made by DATA in the names of the investors. This Court has already clearly ruled the Receiver lacks standing to bring claims on behalf of investors. (Omnibus Order pp. 5-6).

DATA, and consequently every count of the Second Amended Complaint including claims for the recovery of transfers allegedly made by DATA, should be dismissed with prejudice.

### C.    Howard Waxenberg Trading LLC is not a Successor in Interest to Data

The Receiver has also alleged, for the first time in its Second Amended Complaint, that Howard Waxenberg Trading LLC is "the successor in interest" to DATA. To the extent that this legal principal has any application here, as set forth above, its application would be, and is in the allegations of the Second Amended Complaint, based solely on the alleged fraudulent misrepresentations of Howard Waxenberg and is contrary to the facts alleged in the Second Amended Complaint. Indeed, the facts

---

[7] **(b) Capacity to Sue or be Sued.** The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, *except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States*, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., Sections 754 and 959(a).

alleged in the Second Amended Complaint regarding Waxenberg's actual treatment and use of DATA and the Receivership Entities negate any application of a "successor in interest" theory.  The Receiver cannot make a good faith claim otherwise.

We have found no case holding that a successor-in-interest has rights *greater* than the rights of its predecessor.  A defrauding party has no right to seek return of disbursed funds.  *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274 (7th Cir. 1997) (Receiver did not have standing to sue on behalf of the defrauder because "he had not been wronged" and, even if appointed, could not have sued on behalf of trading account because "it is not a corporation or other legally recognized entity on whose behalf a receiver or anyone else could sue").  Even assuming, *arguendo*, that Howard Waxenberg Trading is the successor-in-interest to DATA, because DATA is legally nothing more than Howard Waxenberg's fictitious business name (and, hence, is really Howard Waxenberg) and because, as this Court has ruled, Howard Waxenberg has neither right nor standing to ask for money back from investors, neither can Howard Waxenberg Trading.  The Receiver's efforts to "dress up" DATA to appear to be something other than Howard Waxenberg in order to create "rights" to which Howard Waxenberg Trading can succeed must be rejected.

## IV.     THE EQUITABLE REMEDY REQUESTED BY THE RECEIVER IN COUNT II IS BEYOND THE JURISDICTION OF THE DISTRICT COURT

The Defendants acknowledge that the Omnibus Order held that the Receiver had complied with the notice pleading requirements of Rule 8, Fed.R.Civ.P., and therefore it was "premature to address the legal merits of the Receiver's unjust enrichment claims on a motion to dismiss." (Omnibus Order p. 11).  However, in the Second Amended Complaint, the Receiver has re-pled its previous unjust enrichment claim in two separate counts.  In Count II, "Unjust Enrichment – 'Return of Principal'," the Receiver seeks to recover a benefit consisting of a transfer of only "money in the amount of the Defendant's

---

Federal Rules of Civil Procedure Rule 17 (Emphasis Added).

purported principal investment."  Because the Receiver has further clarified and specifically identified the alleged "benefit" in Count II as *only* the Trust's *principal* investment, Count II fails to state a cause of action.  Entertaining the Receiver's cause of action can only be accomplished by impermissibly expanding the equitable powers of this Court by creating a previously unknown equitable remedy that bears no relationship to "unjust enrichment."

The Trust, like the other eighty defendants, was an investor.  Unlike many of the other defendants, however, the Trust received its principal in December of 2003, almost 1-½ years prior to Howard Waxenberg's death.  The Second Amended Complaint alleges that the Defendant received a transfer of its principal investment of $921,500.00 from Howard Waxenberg Trading. (Second Amended Complaint ¶¶ 107-108).

The allegations in Count II indicate the Receiver's misplaced belief that it has some vague, undefined, and, apparently, unrestrained power "under equitable principles" to recover monies in excess of the amounts by which a defendant was allegedly unjustly enriched.  As a matter of law no such remedy exists.[8]  The Receiver has pled that the Trust made considerable capital *investments* in the Receivership Entities (however that group is defined).  Thus, the Trust has a legitimate claim of entitlement to the returned funds. *Commodity Future Trading Comm'n,* 34 F. Supp. 2d 203, 207 (S.D.N.Y. 1999) ("…courts have permitted seizure or ordered disgorgement only after determining that the relief defendant in fact had no legitimate claim to the money.").

Indeed, courts have "generally allowed Ponzi scheme investors to retain payments up to the amount invested because investors have claims for restitution or rescission against the debtor that operated the scheme." *In re Lake States Commodities, Inc.*, 253 B.R. 866, 871-872 (Bkrtcy. N.D. Ill. 2000).

---

[8] Rather than avail himself of the preferential avoidance remedies in bankruptcy court, the Receiver elected to proceed in this Court and seek relief available only in bankruptcy court.

> Whether characterized as a contractual obligation or a right to restitution, from the moment a person entrusts money to a debtor, the debtor is indebted to them for the amount of that investment. (Citations omitted). It has long been held that an investor in a fraudulent scheme has a right to recover his principal from the moment he was deceived into paying it. *See Eby v. Ashley*, 1 F.2d 971, 973 (4th Cir.1924), cert. denied, 266 U.S. 631, 45 S.Ct. 197, 69 L.Ed. 478 (1925).

*In re Leneve*, 341 B.R. 53, 62 (Bkrtcy.S.D.Fla.2006) (The fact that the investor may have been investing in a fraudulent scheme "does not itself eliminate the 'value' of the investment"); *See also Dicello v. Jenkins*, 160 B.R. 1 (Bkrtcy.D.D.C.1993) (investors in a fraudulent operation or Ponzi scheme nonetheless have a claim for the return of their initial investment); (*See also* Cases Cited in Omnibus Order p. 6).

The Receiver has, in past motions, relied heavily on cases relating to equitable *distributions*. These cases differ significantly from suits to bring money back into the ephemeral Receivership Entities. In *SEC v. Elliott,* 953 F.2d 1560, 1574-1575 (11th Cir. 1992), the Eleventh Circuit explained this critical distinction:

> Although [investor] claimants were not permitted to trace into the receivership based on equitable theories of fraud, it is appropriate to permit [defendant] to raise the defense of fraud. In [defendant's] case, the receiver is reaching out to pull money into the fund. This is quite a different situation from that of the other claimants. The other claimants were not permitted to trace into the receivership because they were all defrauded in the same way, and the remaining funds were insufficient to cover their claims. The other claimants were not permitted to use fraud as a sword to trace assets when the assets were dissipated, while [defendant] is using fraud as a shield to prevent further financial damage to himself. It would be difficult for equity to bring money into the receivership from someone who was defrauded by Elliott. In effect, equity would be permitting further torment of a defrauded investor.

In *Elliott*, a defrauded creditor had received a "loan" and asserted a right to set-off when the SEC sued for the loan proceeds. In *Elliott*, as here, the receiver argued that *Elliott* should not be able to raise the set-off defense because "special circumstances of mass fraud with hundreds of defrauded creditors require special rules" but the Eleventh Circuit Court held "this argument can only go so far." In examining a defendant's legal right to raise a defense the Court found:

16

> The cases of each creditor must be examined individually to determine the rights of that individual.  The Receiver cannot, for the sake of expediency, group together claimants with different claims.  The law recognizes a right to setoff, and courts are not "free to ignore [the setoff rule] when they think [its] application would be 'unjust.'" *Applied Logic,* 576 F.2d at 957.

*Id.*

As this Court noted in its Omnibus Order, the Receiver cites only one case that appears to allow the SEC to recover the entire amount distributed to an investor in a Ponzi scheme without regard for the investor's initial investment. *SEC v. George,* 426 F.3d 786 (6th Cir. 2003).  *George* stands alone in this holding, does not apply an unjust enrichment analysis, and relies in its opinion on "distribution" cases, not on cases seeking disgorgement against third parties.  Even assuming however, that *George* was correctly decided, which it is not, it is not the law in the Eleventh Circuit.  In the Eleventh Circuit *Elliott* requires that courts consider each case, and if a debt, right to restitution, or a legitimate claim to the money exists, those facts cannot be ignored merely because the Receiver thinks it is "unjust."  In this case, the rights of the investor-defendants like the Trust, clearly alleged in Count II of the Second Amended Complaint, cannot be ignored without creating an equitable remedy exceeding the scope of known equitable remedies available in the federal courts. See *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999).  The Receiver's unjust enrichment claim in Count II must be dismissed because the Receiver has failed to state a cause of action.  The return of an investor's principal to the investor by definition is plainly is neither enrichment nor is it unjust.

## V.     THE RECEIVER'S DUPLICATE CLAIMS FOR UNJUST ENRICHMENT SPECIFICALLY TARGETING MRS. WAXENBERG'S HOME DO NOT STATE INDEPENDENT CAUSES OF ACTION

The Receiver thought it appropriate to duplicate its unjust enrichment claim in four new causes of action designed to threaten Zelda Waxenberg with the loss of her home.  All of these causes of action arise out of the same transfers identified in the attachments to the Second Amended Complaint and are already incorporated in Count VI – the Receiver's Unjust Enrichment Count.  Counts VII, VIII, IX and X

are nothing more than duplicative unjust enrichment remedies.  Like the disgorgement "remedy" previously dismissed by this Court, the Receiver has failed to state independent causes of action and, as a result, Counts VII, VIII, IX and X should be dismissed.

More particularly Count VII should be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, does not, by itself, create a cause of action. *Buck v. American Airlines, Inc*, 476 F.3d 29, 33 (1st Cir. 2007) ("Although the plaintiffs style 'declaratory judgment' as a cause of action, the provision that they cite, 28 U.S.C. § 2201(a), creates a remedy, not a cause of action."); *Economic Opportunity Com'n of Nassau County, Inc. v. County of Nassau*, 106 F.Supp.2d 433, 443 (E.D.N.Y. 2000) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, merely provides a remedy where none previously existed; it does not supply an independent cause of action."); *Steward v. Norfolk, Franklin and Danville Ry. Co.* 486 F. Supp. 744, 748 (D.C.Va.1980) ("Though [plaintiff] attempts to say he has a cause of action under [28 U.S.C. § 2201], the statute creates no cause of action. It grants a remedy. The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights" in conformity with the principles of equity.")

Count VIII is entitled "Unjust Enrichment" and does not even purport to state a cause of action other than that already alleged in Count VI.

In Count IX the Receiver attempts to assert another unjust enrichment cause of action for "Constructive Trust."  Count IX must be dismissed for failing to state a cause of action upon which relief can be granted.  As a fundamental matter, a "constructive trust" is an extraordinary equitable *remedy*, not a traditional cause of action.  *Collinson v. Miller*, 903 So.2d 221, 228 (Fla. 2d DCA 2005), citing *Bauman v. Rayburn*, 878 So.2d 1273, 1275 n.1 (Fla. 5th DCA 2004).  In *Collinson*, Judge Altenbernd wrote:

> We recognize that some cases have treated constructive trust in a manner
> similar to a cause of action, by discussing the 'elements' of such a claim
> and even treating such a claim for constructive trust as subject to
> dismissal for failure to state a cause of action …

> Although constructive trusts may be an effective and appropriate solution
> in some cases to redress 'human knavery', the remedy remains an
> extraordinary one.  Certainly, courts should hesitate to employ such an
> equitable remedy to permit recovery where an action at law would
> prohibit recovery, where the remedy would permit or reward violation of
> other laws, or where the remedy would undermine other legislative
> policies.  Ultimately, it is the fact that a constructive trust is an equitable
> remedy – not a cause of action – that has engendered much confusion in
> this case.  Because a constructive trust is a remedy, it must be imposed
> based upon an established cause of action.

*Collinson*, 903 So. 2d at 228.  In Count IX, the Receiver has failed to allege an established cause of action

and therefore Count IX must be dismissed.

In Count IX, the Receiver has failed to allege an established cause of action

Moreover, to seek the remedy of constructive trust the Receiver must allege sufficient ultimate

facts to give rise to a constructive trust: (1) a promise, express or implied, between the respective

Receivership Entities and either Zelda Waxenberg or the Trust, (2) transfer of the property in reliance on

the promise, (3) a confidential relationship between the Receivership Entities and either Zelda Waxenberg

or the Trust, and (4) resulting unjust enrichment to either Zelda Waxenberg or the Trust.  *Abreu v. Amaro*,

534 So.2d 771, 772 (Fla. 3d DCA 1988).  "A confidential relationship is found 'where confidence is

reposed by one party and a trust accepted by the other.'"  *Hutson v. Brooks*, 646 So.2d 276 (Fla. 2d DCA

1994) (citing *Traub v. Traub*, 102 So.2d 157, 159 (Fla. 2d DCA 1958).  Count IX fails to allege the first

three elements against either Zelda Waxenberg or the Trust.  Count IX must be dismissed.

In Count X the Receiver attempts to assert a cause of action for "Equitable Lien."  Count X

likewise fails to state a cause of action upon which relief can be granted.  Imposition of an equitable lien

is also a *remedy* for unjust enrichment, not a cause of action.  To avail oneself of the remedy of an

equitable lien, the claim must be imposed upon some established cause of action.  Count X is not properly

pled upon an established cause of action.  Indeed, as with the previous causes of action, the transfers that

are the subject of Count X are also included in the Receiver's unjust enrichment claims in Count VI.

19

**VI.      THE RECEIVER'S CLAIM FOR ACCOUNTING SHOULD BE
          <u>DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION</u>**

Count XI of the Second Amended Complaint attempts to state a cause of action for an

accounting.  This Count should be dismissed because the Receiver has an adequate remedy at law and

because the allegations made by the Receiver do not support such a claim.

To state a claim for an equitable accounting under Florida law, a party "must show the existence

of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is

inadequate."  *Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276,

1285-1286 (M.D. Fla. 1999) (citing *Kee v. National Reserve Life Insurance Co.*, 918 F.2d 1638, 1540

(11th Cir. 1990)); *F.A. Chastain Constr., Inc. v. Pratt*, 146 So.2d 910, 913 (Fla. 3d DCA 1962).

The Receiver does not allege the existence of a fiduciary relationship and instead relies on the

existence of a complex transaction.  Specifically, the Receiver alleges that "the complex nature and scope

of the various Receivership Entities' accounts and the transfers to the Defendant, coupled with the

inherently fraudulent intent behind Waxenberg's Ponzi scheme, have left Receiver with *a need for*

*discovery* as to other possible transfers made to Defendant." (Second Amended Complaint at ¶169)

(emphasis added).

Curiously, and fatally, it is not the complexity of the relationship between Howard Waxenberg

and Zelda Waxenberg that supports the Receiver's request.  Rather it is the complexity of the alleged

Ponzi scheme and the Receivership Entities' accounts that are relied upon by the Receiver.  The Receiver

does not claim that the allegedly complex "accounts" are mutual accounts or that Zelda Waxenberg has

any information regarding these accounts.  The Receiver also does not allege that Zelda Waxenberg

engaged in any fraud relating to these transactions.

The documents and records that contain information regarding the "Receivership Entities'

accounts and the transfers to the Defendant" as well as any documents or information relating to the

alleged "Ponzi scheme" are within the *exclusive* possession of the Receiver.  As a result, no basis for an accounting has been alleged.  *First Nat. Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1551 (11th Cir. 1992) ("In light of the fact that [plaintiff] had the opportunity to examine the records, it is not clear why it would be entitled to an order directing [defendant] to make an accounting.  [Plaintiff] has shown no circumstances to justify such an order."); *Clark v. Giddings*, 48 So.2d 523, 525 (Fla. 1950) (denying request for accounting because the plaintiff had as much information about the payments as the defendant).

Furthermore, while the Receiver has stated that "receiver has no adequate remedy at law to *obtain that information* outside of an accounting."  (Second Amended Complaint at ¶170) (emphasis added) the Second Amended Complaint as a whole negates this allegation.  The Receiver has attempted to plead statutory fraudulent transfer and alternative claims for unjust enrichment.  These remedies, if properly pled, are adequate.  *Florida Software Systems, Inc.*, 46 F.Supp.2d at 1285-1286; *Nautica Intern, Inc. v. Intermarine USA, L.P.*, 5 F.Supp.2d 1333, 1344 (S.D. Fla., 1998) ("It is well settled under Florida law, however, that an action for an accounting will not stand where plaintiff has not alleged the inadequacy of the remedy at law.")

## CONCLUSION

For each of the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint should be granted in its entirety.  Further, Defendants incorporate all other legal arguments raised by Investor Defendants in support of their motions to dismiss amended complaints to the extent they are not inconsistent herewith.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 14, 2007, I electronically filed the foregoing with the Clerk of

the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Carl R. Nelson
Maya M. Lockwood
Gianluca Morello
Fowler White Boggs Banker P.A.
501 E. Kennedy Blvd., Ste 1700
Tampa, FL 33602


/s Douglas J. Titus, Jr.
Douglas J. Titus, Jr.
Florida Bar No. 213756
GEORGE AND TITUS, P.A.
100 S. Ashley Dr., Ste 1290
Tampa, Florida 33602
813-273-0355
Fax No.: 813-276-1515

Attorneys for Zelda J. Waxenberg