UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
BURTON WIAND RECEIVERSHIP
CASES PENDING IN THE TAMPA                    Case Nos.: 8:05-cv-1856-T-27MSS et al.
DIVISION OF THE MIDDLE
DISTRICT OF FLORIDA

_____/

## OMNIBUS ORDER

**BEFORE THE COURT** is the January 28, 2008 Report and Recommendation submitted by the Magistrate Judge recommending that Defendants' Motions to Dismiss, listed in Appendix A to the Report and Recommendation, be granted in part and denied in part. The Receiver filed an Amended Omnibus Objection to the Report and Recommendation, to which certain Defendants responded.

### *Standard of Review*

The District Court is required to "make a *de novo* determination of those portions of the magistrate's report or . . . recommendation to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The District Court may "accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

The Magistrate Judge engaged in a thorough, well-reasoned analysis of the numerous substantive issues presented in Defendants' forty-five Motions to Dismiss. This Court adopts in full the recommendations of the Magistrate Judge regarding the dismissal of claims brought by Plaintiff Downing & Associates Technical Analysis ("DATA"), the applicability of the relevant statutes of

1

limitations to the Receiver's claims, and, after careful, independent review, all portions of the Report and Recommendation to which no objection was made.  With respect to the Receiver's claims pursuant to Florida's fraudulent transfer statute and claims for unjust enrichment, this Court agrees with the Magistrate Judge that the facts alleged in the Amended Complaints do not readily fit the typical formulation of these claims.  Nonetheless, for the reasons set forth below, this Court is ultimately persuaded that the Receiver, who is not himself a typical litigant, has presented allegations sufficient to fulfill notice pleading requirements.

### *Discussion*

### A.   *DATA and Howard Waxenberg Trading, LLC*

In the March 27, 2007 Omnibus Order, this Court held: "To the extent the Receiver can plead facts, in good faith, showing that DATA was a separate legal entity that was injured by disbursements of its funds for unauthorized purposes, the Receiver may include DATA as a party-plaintiff." (*See e.g.*, 8:06-cv-609, Dkt. 33 at 15).  The Receiver alleges no facts in the Amended Complaints indicating that DATA was a separate legal entity.  The Magistrate Judge correctly recommended dismissal with prejudice of all claims brought on behalf of DATA.[1]

The Receiver argues that once DATA was succeeded by Howard Waxenberg Trading, LLC, which is alleged to be a separate legal entity, "there is no reason to preclude the Receiver's recovery of DATA's assets."  (Objection at 13).  The Receiver provides no authority supporting this contention, and the Magistrate Judge properly rejected this argument. *See also Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997).  Accordingly, all claims to recover for

---

[1] The Magistrate Judge also recommended denying Defendants' Motions to Dismiss with respect to Howard Waxenberg Trading, LLC, as the Receiver alleged that the company was "formed as a California limited liability company." (R&R at 12).  Defendants have not objected to this recommendation and the Court adopts it herein.

transfers made by Downing & Associates Technical Analysis (DATA) to Defendants are hereby **DISMISSED WITH PREJUDICE**.

### B.    FUFTA

The Magistrate Judge recommended dismissal of the Receiver's claims brought pursuant to Florida's Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101 *et seq.* ("FUFTA"), against the Defendants, with the exception of the FUFTA claims against Defendant Zelda Waxenberg (Case No. 05-cv-1856). Mrs. Waxenberg has not objected to that recommendation and the Court hereby adopts that recommendation. The Receiver objects to the dismissal of the FUFTA claims against the remaining Defendants.

FUFTA provides a statutory scheme by which creditors may set aside a debtor's transfer of assets to third parties under certain circumstances. *See e.g.*, *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 191 (Fla. 2003). The Magistrate Judge accepted that the Receiver adequately pled the primary statutory elements required to sustain a FUFTA claim: that the Receivership Entities are "creditors" with a "claim" against Waxenberg and that Waxenberg was therefore a "debtor." The Magistrate Judge determined, however, that Waxenberg, as the debtor, did not engage in the requisite "transfer" of an "asset."

The applicable statutory provisions of FUFTA are "exceedingly clear," and the Magistrate Judge properly focused on whether the Receiver alleged facts sufficient to demonstrate that a "transfer" of an "asset" occurred. *See id.* at 192. FUFTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with <u>an asset or an interest in an asset</u>, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat. § 726.102(12) (emphasis added). An "asset" is defined as the

3

"property of a debtor." Fla. Stat. § 726.102(2). Accordingly, pursuant to the statutory language, the debtor must transfer his property or an "interest in [his property]."[2]

As the Magistrate Judge noted, the Amended Complaints allege that Waxenberg transferred the funds of the Receivership Entities to the Defendants; the Amended Complaints do not specifically allege that Waxenberg transferred his own funds. (*See e.g.*, 8:06-cv-609, Dkt. 36, ¶ 83). Based on these allegations, the Magistrate Judge determined that Waxenberg did not engage in a "transfer" of an "asset" because the funds transferred were those of the alleged creditors, the Receivership Entities, rather than Waxenberg, the alleged debtor.

The Amended Complaints also allege, however, that Waxenberg: (1) created, managed, and controlled the Receivership Entities; (2) used the Receivership Entities to effect a Ponzi scheme; (3) periodically transferred investors' money between the Receivership Entities' accounts and his personal accounts; and (4) misappropriated the Receivership Entities' funds for personal expenses. (*See e.g.*, 8:06-cv-609, Dkt. 36, ¶¶ 29, 35, 42, 47, 50, 76). These are classic allegations of an "alter ego" relationship, based on which creditors may engage in "reverse" piercing of a corporate veil. *See e.g., Futch v. Head*, 511 So. 2d 314, 322 (Fla. 1st DCA 1987); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (citing *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So. 2d 1114, 1117-21 (Fla. 1984)).

The Receiver has cited no Florida case specifically holding that "property of the debtor" includes property in the possession of a debtor's alter ego corporation, especially when that alter ego

---

[2] The statute provides examples of certain interests in a debtor's property, including a "lease[] and creation of lien or other encumbrance." Fla. Stat. § 726.102(12); *see also In re Levine*, 134 F.3d 1046, 1050 (11th Cir. 1998) (holding that an annuity created from a debtor's funds constitutes an interest in the debtor's property).

corporation is also the alleged "creditor." *Cf. Mason v. E. Speer & Assocs., Inc.*, 846 So. 2d 529, 537 (Fla. 4th DCA 2003) (finding that asset was not the property of the debtor corporation when asset was owned by another corporation, both of which were controlled by one individual, because court had properly denied request to pierce corporate veil). The Court agrees with the Magistrate Judge that such an interpretation strains the statutory definition of "asset." And as the Magistrate Judge also recognizes, the Receiver's FUFTA claims are already precipitously premised on the Receivership Entities' theoretical "creditor" status.[3]

Nevertheless, this Court is constrained to recognize the Receiver's FUFTA claims pursuant to *S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992). In *Elliott*, a receiver brought a FUFTA claim against Ponzi scheme investors seeking to recover certain bonds transferred as collateral to the investors under circumstances substantially similar to the instant case. Specifically, the receiver's FUFTA claim was brought against two investors to whom Elliott, the perpetrator of the Ponzi-like scheme, and/or his entities, pledged $85,000 in municipal bonds shortly before the receiver was appointed. *Id.* at 1567-68. Although the receiver's FUFTA claim was acknowledged, the discussion in *Elliott* centered on whether the investors were entitled to present evidence as to their affirmative defenses. *See id.* at 1568. *Elliott* does not contain a substantive analysis regarding whether the requisite statutory elements of the Receiver's FUFTA claim were met.[4] Indeed, the court declined

---

[3] This Court rejects the Receiver's reliance on bankruptcy cases, which were properly distinguished by the Magistrate Judge. *See In re M & L Bus. Mach. Co., Inc.*, 160 B.R. 851, 857 (Bkrtcy. D. Colo.1993); *In re Int'l Loan Network, Inc.*, 160 B.R. 1, 11 (Bkrtcy. D. D.C. 1993). The bankruptcy fraudulent transfer statute does not require an interest to be in "property of a debtor" as does FUFTA; rather, it allows a trustee to avoid any "transfer . . . of an interest of the debtor in property," which would, on its face, apply to a debtor's alter ego corporations. *See* 11 U.S.C. § 548(a)(1).

[4] Recent Florida Supreme Court cases have specifically analyzed the statutory elements. *See e.g., Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004); *Friedman*, 863 So. 2d at 192.

to differentiate between Elliott and his entities because of their interrelated nature, noting that "Elliott had comingled funds between the various companies and had failed to maintain a strict separation of the companies." *Id.* at 1565 n.1; *S.E.C. v. Elliott*, No. 87-1212, 1989 WL 90550, at *2 (S.D. Fla. April 29, 1989).

While this Court has some reservation regarding the viability of this analysis given the Florida Supreme Court's repeated insistence on the existence of a "creditor" with a "claim" against a "debtor," *S.E.C. v. Elliott* remains instructive for two reasons. First, the Eleventh Circuit has indicated a willingness to allow a receiver to pursue a FUFTA claim under facts substantially similar to facts alleged here. Second, the court has, at least implicitly, recognized that in a receivership proceeding, there need not be an artificial distinction between the property of a Ponzi scheme perpetrator and the property of his alter ego corporations used to perpetrate the scheme. *See also In re Bendetti*, 131 F. App'x 224, 227 (11th Cir. 2005) (acknowledging that FUFTA requires that a debtor "actually owned the property at issue," but also considering whether the debtor was the "de facto, constructive or equitable owner of any of the transferred assets.")

In addition, there is some support for this approach in the plain language of FUFTA, which specifies that "[a] transfer is not made until the debtor has acquired rights in the asset transferred." Fla. Stat. § 726.107(4). Arguably, a debtor may have "rights" in property over which he has constructive control, if not legal title. In the instant case, based on the allegations of the Amended Complaints, there is, at the least, a question as to whether Waxenberg had "rights" in the Receivership Entities' funds sufficient to effect a transfer.

The Magistrate Judge engaged in a comprehensive analysis regarding the application of FUFTA to these cases. Notwithstanding, this Court finds that *S.E.C. v. Elliott* controls and that the

Amended Complaints satisfy notice pleading requirements. In making this determination, this Court holds only that the Receiver has stated claims pursuant to FUFTA and makes no finding as to the ultimate viability of these claims or the application of any defenses. Based on the foregoing, the Court respectfully disagrees with the Magistrate Judge and finds that Defendants' Motions to Dismiss the FUFTA claims are **DENIED** to the extent the claims are within the statute of limitations.

### C.   Unjust Enrichment

### 1.   Claim against Mrs. Waxenberg

The Magistrate Judge recommended dismissal of the Receiver's unjust enrichment claims against Mrs. Waxenberg to the extent she received transfers directly from Waxenberg. (*See* Case No. 05-cv-1856, Dkt. 65, Exh. A). Pursuant to Florida law, an unjust enrichment claim requires evidence that the plaintiff conferred a benefit on the defendant. *See Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n.4 (Fla. 2004); *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1314 (11th Cir. 2007). The Receiver provides no authority in support of the contention that the Receivership Entities may sue Mrs. Waxenberg for unjust enrichment when she was allegedly unjustly enriched by the actions of Waxenberg, a third party. Nevertheless, considering the allegations in the Second Amended Complaint discussed earlier concerning Waxenburg's use of the Receivership Entities to perpetuate the Ponzi scheme, the Court respectfully rejects that portion of the Report and Recommendation recommending that the unjust enrichment claims against Mrs. Waxenberg for transfers made to her from Waxenberg be dismissed. The Motion to Dismiss those claims is therefore **DENIED.**

2.     *Claims against remaining Defendants*

The Magistrate Judge recommended dismissal of the Receiver's unjust enrichment claims against the remaining Defendants to the extent the Receiver seeks "return of principal" and "return of principal in excess of pro rata share." The Receiver objects to the Magistrate Judge's determination for two reasons: (1) because the SEC can recover principal payments in summary disgorgement proceedings, the Receiver asserts he should be able to pursue a common law claim that "achieves a similar result"; and (2) this Court previously held that it was premature to address the merits of these claims on motions to dismiss.

With respect to the first objection, the Receiver asserts that "no reason exists for denying him a claim that achieves a similar result as achieved by the disgorgement remedy available to the SEC in enforcement proceedings." (Objection at 5). This Court joins the Magistrate Judge in rejecting this contention. The SEC is statutorily authorized to sue violators of the securities laws and to seek injunctive relief. *See* 15 U.S.C. § 78aa; 15 U.S.C. § 78u(d)(1); *S.E.C. v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). "The SEC's power to obtain injunctive relief has been broadly read to include disgorgement of profits realized from violations of the securities laws," even though disgorgement is not specifically authorized as a remedy by statute. *S.E.C. v. Clark*, 915 F.2d 439, 453 (9th Cir. 1990); *S.E.C. v. Wenke*, 783 F.2d 829, 837 (9th Cir. 1986); *see e.g.*, *S.E.C. v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972). The SEC may also obtain equitable relief even against a person who is not accused of wrongdoing, as a relief defendant, when that person has received ill-gotten funds and does not have a legitimate claim to those funds. *Cavanagh*, 155 F.3d at 136. Requiring disgorgement from relief defendants, including defrauded Ponzi scheme investors, is justified because the wrongdoers could otherwise circumvent the SEC's power to recapture fraud

8

proceeds. *S.E.C. v. George*, 426 F.3d 786, 798 (6th Cir. 2005).

By contrast to the enforcement power of the SEC, it is well-established that a court-appointed receiver has no greater rights or powers than the corporation in receivership and "can only make a claim which the corporation could have made." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990) (citing *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 429 (1972))[5]; *Scholes v. Lehmann,* 56 F.3d 750, 753 (7th Cir.1995). Therefore, it has been repeatedly held that a receiver lacks standing to pursue claims that could only be brought by the investors. *See e.g.,* *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1235 (11th Cir. 2003) (receiver is not authorized to bring claim for negligence); *Fleming*, 922 F.2d at 25 (receiver is not authorized to bring claims against corporation for violations of the commodity exchange act); *Liberte Capital Group, LLC v. Capwill*, 248 F. App'x 650, 656 (6th Cir. 2007) (receiver is not authorized to bring investor's claims for mandatory arbitration against brokers).

The Court finds that the Receiver, by electing to file these ancillary actions, may bring only those claims that could have been brought by the Receivership Entities. Thus, the pertinent question is whether the Receivership Entities could have brought claims for unjust enrichment against the Defendants. In order to state a cause of action for unjust enrichment or "quasi contract" under Florida law, the Receiver must plead facts showing that: (1) the Receivership Entities conferred a benefit on the Defendants; (2) the Defendants had knowledge of the benefit; (3) the Defendants

---

[5] As the Receiver notes, certain language in *McCandless v. Furlaud* could be read to contradict the general rule that a receiver only stands in the shoes of the corporation. *See McCandless v. Furlaud,* 296 U.S. 140, 160-61 (1935) ("There is no occasion to consider whether the corporation itself at the instance of new shareholders would be permitted to disaffirm the fraud and maintain a suit in equity for appropriate relief. We put that question by. Enough that the receiver has the requisite capacity.") Nonetheless, the Supreme Court has clarified that "the opinion of the Court by Mr. Justice Cardozo clearly emphasizes that the receiver in that case was suing on behalf of the corporation, not third parties; he was simply stating the same claim that the corporation could have made had it brought suit prior to entering receivership." *Caplin,* 406 U.S. at 429.

accepted or retained the benefit conferred; and (4) circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying fair value for it. *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007).[6] The Receiver has adequately alleged the first three elements: that the Receivership Entities conferred a benefit on Defendants by paying them money, and that the Defendants knowingly and voluntarily accepted and retained this money. (*See e.g.*, Case No. 8:06-cv-609, Dkt. 36, ¶¶ 94, 96).

The pertinent issue with respect to these motions is whether the Receiver has adequately pled the fourth element: that "the circumstances are such that it is inequitable for the Defendant to retain the benefit without paying fair value for it."  The Amended Complaints generally allege: "[t]he circumstances alleged in this complaint render the Defendant's retention of the benefit inequitable and unjust, including to the investors of the Receiverships Entities as a whole, so the Defendant must pay the Receiver, acting on behalf of [the Receivership Entities], the value of the benefit received." (*Id.* at ¶ 97).  The Amended Complaints also specifically allege that payments made pursuant to Waxenberg's alleged Ponzi scheme "dissipated the assets of the Receivership Entities," diverted funds that "should have been used for the stated purpose of the Receivership Entities' business, which was to trade securities and futures contracts in an effort to generate trading profits," and that the Receivership Entities were insolvent. (*Id.* at ¶¶ 61, 66, 71, 80).  The Amended Complaints further allege that the investors who received returns of principal "did not actually receive their principal investment money.  Instead, those investor 'accounts' received commingled funds of investors in an amount equivalent to their principal investment money." (*Id.* at ¶ 69).

The Court recognizes the distinction drawn by the Magistrate Judge in allowing the Receiver

---

[6] The parties do not dispute the application of Florida law to these disputes.

to pursue the claim for "false profits" and recommending that the claims for return of principal amounts be dismissed.  It is axiomatic that "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc.*, 959 So. 2d at 331-332.  In a typical, legitimate investment arrangement, it would be difficult to find that investors have been "benefitted" or "enriched" by a return of money equal to the amount they initially invested.  The investors' original investment would furnish adequate consideration for the return of a corresponding amount and would leave the corporation no worse off than when it started.

On the other hand, when the Defendants in these cases received payments, those payments are alleged to have dissipated the assets of the insolvent Receivership Entities.  This allegation is not without facial merit, as the Receivership Entities are considered insolvent from their very inception by virtue of being used to perpetrate a Ponzi scheme.  *See Scholes*, 56 F.3d at 755.  Thus, any payment, whether characterized as principal or profits, injured the Receivership Entities.  *But see Johnson v. Studholme*, 619 F. Supp. 1347, 1350 (D. Colo. 1985) (holding that Ponzi scheme fund was not "'injured' by payments that were essential to its existence"), *aff'd, Johnson v. Hendricks*, 933 F.2d 908 (10th Cir. 1987).

Accordingly, this Court respectfully disagrees with the Magistrate Judge and finds that the Receiver has stated claims for return of principal payments as well as false profits, under Rule 8 notice pleading standards.  Whether the circumstances of the payments to Defendants were, in fact, inequitable as to the Receivership Entities, and whether the investors did, in fact, pay fair consideration for the funds they received, are issues not appropriate for resolution on a motion to dismiss.  *See Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.,* 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005) (holding that issue of whether defendant was enriched by plaintiff's services

11

was not appropriate for determination on a motion to dismiss). In determining that the Receiver has pled claims for unjust enrichment, this Court makes no finding as to the ultimate merits of these claims, the viability of any defenses that may be asserted by the Defendants, or the Receiver's entitlement to damages.

Based on the foregoing, the Court adopts the recommendation of the Magistrate Judge as to the unjust enrichment claim for false profits but further finds that the Receiver is entitled to pursue claims for return of principal and principal in excess of pro rata share. The Defendants' Motions to Dismiss the Receiver's unjust enrichment claims are therefore **DENIED**.

### D.   *Levine Defendants' Motion for Summary Judgment*

The Magistrate Judge recommended that the Levine Defendants' Motion for Summary Judgment (Case No. 8:06-cv-647, Dkts. 44, 55) be granted on the unjust enrichment claim because an express contract existed between the parties. The Receiver argues that the Defendants, as the moving party, must prove that a *valid, enforceable* contract exists. The Receiver contends that Defendants have failed to meet this burden because the contract was procured with the intent to defraud and neither the Receivership Entities nor the Receiver could enforce the contract.

As the Receiver notes, the Florida Supreme Court has held that even when an express contract exists, an equitable action on an implied contract may still be viable under certain circumstances:

> [T]here are many cases where for technical invalidity or other reason the express contract cannot be relied upon as the foundation of the action and the plaintiff can only obtain redress, and then sometimes in part only, by action in general assumpsit on the *implied* contract. So it has become quite customary, in an abundance of caution, to join the common counts with the special count which declares on the express contract, so that, if for any reason the plaintiff fails in his proof of the express contract, he may have an opportunity to at least recover the value of the work actually done or the materials actually furnished, or so much thereof as have not been paid

for, upon an implied contract. And frequently in such cases the invalid or otherwise inadmissible express contract may be introduced in evidence on the question of the value of the services performed or the goods furnished. *Hazen v. Cobb*, 117 So. 853, 857-58 (Fla. 1928) (emphasis in original).

*See also Rohrback v. Reva-Max, Inc.*, 550 So. 2d 33, 34 (Fla. 3d DCA 1989) (jury rejected Plaintiff's claim for express contract but allowed recovery on quantum meruit); *cf. Corn v. Greco*, 694 So. 2d 833, 834-35 (Fla. 2d DCA 1997) (where there was "an enforceable contract," award of quantum meruit damages was improper).

At the very least, there is an issue of fact as to whether the Levines' contract is fraudulent or otherwise unenforceable, as the contract formed the basis for Waxenberg's illegal Ponzi scheme. Defendants' argument that the Receiver has failed to meet his burden at summary judgment is not persuasive. Defendants, as the moving party, bear the initial burden to demonstrate the absence of a genuine issue of material fact before the burden shifts to the Receiver, the non-moving party. *See Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1313-14 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The Amended Complaint clearly alleges the existence of a classic Ponzi scheme, and Defendants provide no evidence disputing these allegations.

The Levine Defendants have accordingly failed to meet their burden on summary judgment to prove that they are entitled to judgement as a matter of law. Again, however, the Court makes no finding as to the ultimate viability of the Receiver's unjust enrichment claims, defenses to the claims, or the Receiver's entitlement to damages. Based on the foregoing, the Court finds that the Levine Defendants' motion for summary judgment on the claims for unjust enrichment is due to be **DENIED**.

### E.   *Remaining Arguments*

The Receiver does not object to the dismissal with prejudice of Counts VII, IX, and X and

the dismissal without prejudice of Count VIII[7] of the Second Amended Complaint against Mrs. Waxenberg.   (R&R at 32).   Mrs. Waxenberg has not objected to the Magistrate Judge's determination that the Receiver adequately alleges a claim for an equitable accounting. (R&R at 45). The Receiver does not object to the dismissal without prejudice of claims against individual trustees, to the extent the Amended Complaints to do not identify which transactions involved the Trustees in their individual capacities, with the exception of the claims against Mrs. Waxenberg and John Stevenson (Case No. 8:06-cv-837).   (R&R at 44).   The Court finds that the Magistrate Judge's conclusions on these claims are correct and they are adopted herein.

The Receiver does object to the Magistrate Judge's resolution of the Defendants' Motions to Dismiss based on the applicable statutes of limitations.

## 1.   *Unjust enrichment claims*

The Magistrate Judge correctly determined that the Receiver's unjust enrichment claims are not subject to the delayed discovery rule in Fla. Stat. § 95.031(2)(a) or the doctrine of equitable tolling.

The delayed discovery rule provides that an action will not begin running until "the time the facts giving rise to the cause of action were discovered or should have been discovered."  Fla. Stat. § 95.031(2)(a).  However, this provision applies only to actions "founded upon fraud under s. 95.11(3), including constructive fraud."   The Receiver's unjust enrichment claims are not actions founded upon fraud under Fla. Stat. § 95.11(3)(j).   Rather, they are governed by the statute of limitations in Fla. Stat. § 95.11(3)(k), which provides a four year statute of limitations for "[a] legal

---

[7] The Receiver does object to the dismissal of Count VIII to the extent the Court allows the claims by DATA to proceed.  (Objection at 14, n.3).  As set forth above, DATA is dismissed with prejudice from these actions.

14

or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, merchandise, and on store accounts." *See Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DCA 2005) (noting that statute of limitations for unjust enrichment claim is four years under § 95.11(3)(k)).

As a result, the claims are not afforded delayed discovery, but accrue "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1); *see Davis v. Monahan*, 832 So. 2d 708, 712 (Fla. 2002) (rejecting application of delayed discovery doctrine to unjust enrichment action). The Receiver argues that the last element of an unjust enrichment claim occurs when it becomes inequitable for a defendant to retain a benefit. Under Florida law, however, an unjust enrichment claim accrues when the benefit is conferred. *See e.g., Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. 4th DCA 2006); *Swafford*, 906 So. 2d at 1195-96.

In addition, the Magistrate Judge correctly found that the unjust enrichment claims are not subject to equitable tolling, but may be tolled only for the reasons set forth in Fla. Stat. § 95.051. *See* Fla. Stat. § 95.051(2) ("No disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law"); *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1099 (Fla. 2d DCA 2004) (discussing relevant Florida Supreme Court cases and finding that equitable tolling did not apply to cases governed by chapter 95), *review denied, Hillman v. HCA Health Servs. of Fla., Inc.*, 904 So. 2d 430 (2005);[8] *see also Austrian v. Williams*, 198 F.2d 697, 702 (2d Cir. 1952) (court

---

[8] The Receiver cites one case decided after the Florida Supreme Court cases addressing the impact of § 95.051 on the common law doctrine of equitable tolling. *See Nakagoshi v. Mitsukoshi USA, Inc.*, No. 6:06-cv-338, 2007 WL 1626945, at *4 (M.D. Fla. June 5, 2007). This case is distinguishable, as it involved the application of tolling to the time for filing an administrative charge of discrimination. *See HCA Health Servs. of Fla., Inc.*, 906 So. 2d at 1098 (noting that the Florida Supreme Court has not extended equitable tolling beyond administrative law cases).

may not apply federal equitable rule regarding tolling when in conflict with state law construing state statute of limitations).

This Court finds that the Receiver's unjust enrichment claims are governed by a four year statute of limitations, Fla. Stat. § 95.11(3)(k), subject to the application of the statutory tolling exceptions, Fla. Stat. § 95.051. The Defendants' motions to dismiss the unjust enrichment claims based on the statute of limitations are therefore **DENIED**.

2.    *FUFTA claims*

The Magistrate Judge determined that the allegations of the Amended Complaints do not affirmatively show that the Receiver's claims pursuant to Fla. Stat. § 726.105(1)(a) are time-barred, and no Defendant has objected to this finding. The Magistrate Judge also determined that the claims pursuant to Fla. Stat. § 726.105(1)(b) are time-barred to the extent they seek to recover on transfers made more than four years from the filing of the actions, pursuant to Fla. Stat. § 726.110(2). The Receiver contends that the Magistrate Judge was wrong in rejecting the application of the delayed discovery, continuing tort, and equitable tolling doctrines to Fla. Stat. § 726.110(2).

The Receiver does not provide any authority disputing the Magistrate Judge's determination that because § 726.110(2) does not contain a savings clause, considerations of actual and constructive knowledge are not relevant. *See Paragon Health Servs., Inc. v. Cent. Palm Beach Comm. Mental Health Ctr., Inc.*, 859 So. 2d 1233, 1236 (Fla. 4th DCA 2003). Accordingly, the Magistrate Judge properly rejected the application of the delayed discovery rule.

The Magistrate Judge also properly rejected the application of the continuing tort doctrine, which tolls the statute of limitations for certain continuous tortious conduct. *See e.g., Halkey-Roberts Corp. v. Mackal*, 641 So. 2d 445, 447 (Fla. 2d DCA 1994) (recognizing continuing tort

16

doctrine as tolling limitations from the date the tortious conduct ceases); *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003) (noting that Florida "recognizes an exception to the general statute of limitation rules for *torts* that are continuing in nature"). The Receiver provides no authority for the application of this doctrine to FUFTA, which is not, as the Magistrate Judge noted, an independent cause of action in tort.

Finally, the Magistrate Judge properly rejected the doctrine of equitable tolling, for the reasons set forth above. *See* Fla. Stat. § 95.051 (applying tolling provisions to "any" statute of limitations).

Accordingly, the Court finds that the Defendants' motions to dismiss the FUFTA claims pursuant to Fla. Stat. § 726.105(1)(b) are due to be **GRANTED IN PART** to the extent that the Amended Complaints allege transfers made more than four years prior to the filing of the actions.

### *Conclusion*

Upon consideration, it is **ORDERED AND ADJUDGED**:

1)     The January 28, 2008 Report and Recommendation is adopted in part and rejected in part as set forth more specifically herein, and is made a part of this Order for all purposes, including appellate review.

2)     Defendants' Motions to Dismiss, listed in Appendix A to the January 28, 2008 Report and Recommendation, are **DENIED IN PART** and **GRANTED IN PART** as follows:

   a)     The Motions to Dismiss Plaintiff Downing & Associates Technical Analysis (DATA) are **GRANTED**.  All claims to recover for transfers made by DATA to Defendants are hereby **DISMISSED WITH PREJUDICE**.

   b)     The Motions to Dismiss Plaintiff Howard Waxenberg Trading, LLC are **DENIED**.

c)     The Motions to Dismiss claims against individual trustees are **GRANTED** except for those claims against Mrs. Waxenberg (Case No. 8:05-cv-1856) and John Stevenson (Case No. 8:06-cv-837). The claims against the remaining individual trustees are **DISMISSED WITHOUT PREJUDICE**.

d)     The Motions to Dismiss the FUFTA claims are **GRANTED** to the extent the Receiver alleges claims pursuant to Fla. Stat. § 726.105(1)(b) for transfers made more than four years prior to the filings of these actions, which are **DISMISSED WITH PREJUDICE**.

e)     The Motions to Dismiss the unjust enrichment claims, including the Levine Defendants' converted Motion for Summary Judgment, are **DENIED**.[9]

f)     Defendant Zelda Waxenberg's Motion to Dismiss is also **GRANTED** to the extent that Counts VII, IX, and X are **DISMISSED WITH PREJUDICE** and Count VIII is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Tampa, Florida, on this 26th day of March, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[9] As recommended by the Magistrate Judge, the Receiver is directed to review and dismiss those claims for which he has no good faith basis to believe were preserved by one of the statutory tolling exceptions in Fla. Stat. § 95.051.